Smith *v.* Hunterdon County Mutual Fire Ins. Co.

JOSEPH SMITH

*v.*

THE HUNTERDON COUNTY MUTUAL FIRE INSURANCE COM-
PANY.

The defendant re-insured all its risks, and had a large sum of money in the treasury, being the proceeds of cash payments by the then present and also past policy-holders, and the interest upon the investments thereof, which sum has been of about the same amount for several years.—*Held,* that all the policy-holders who contributed to such surplus are entitled to a proportion thereof according to the amount of their respective payments, whether they continued to be policy-holders at the period of distribution or not.

On bill and answer.

*Mr. W. F. Hayhurst* and *Mr. A. G. Richey,* for complainant.

*Mr. C. A. Skillman* and *Mr. John H. Stewart,* for defendants.

BIRD, V. C.

The Hunterdon County Mutual Fire Insurance Company was organized in the year 1845, by virtue of an act of the legislature of that year, as a mutual company. Twenty years later its powers and privileges were extended. In 1885 its directors conceived that it would be better to re-insure all risks and make distribution of the money then in the treasury. A meeting of the policy-holders was called for March 5th, 1885. At that meeting a resolution was adopted authorizing the directors to re-insure and to make distribution of any surplus. Re-insurance was effected. A large sum of money was then in the treasury and had been for several years. This sum arose from premiums paid in excess of the demands upon the company for losses and expenses, and from interest on such excess.

On June 29th, 1885, the board directed a committee to make distribution of these funds amongst the policy-holders in propor-

tion to the amount of their respective policies *held at the time of re-insurance.* A majority of the committee was about to make distribution, when one member filed his bill to restrain them from making distribution amongst those only who were policy-holders at the time of re-insurance ; because to limit such distribution to those only would be inequitable and unjust, since many others, perchance, who were not then policy-holders, had contributed as much as, and in many cases more than, many who were. An injunction was allowed, and the sole question is : Are policy-holders who contributed to the fund now in the treasury entitled to share in the distribution thereof, although their policies expired a day, or a month, or a year, or five years before the time of re-insurance ? Are the present holders to reap the only benefit of the management or mismanagement which rendered it advisable, if not necessary, to re-insure ?

What principle shall guide the court ? Will it be just to declare that those who come in the last moment and were members but a day, shall take all the profits made by those who had been members for five or ten years, but were not at the time of re-insurance ? Did they earn this fund either by their labor or by their investments ? Clearly, if the court allows the present policy-holders to take all the surplus, it will be permitting the contributions of many to benefit the few.

What was the contract ? It was a mutual obligation to share losses by fire. And to make the contract as absolutely certain as possible, the amount supposed to be necessary for that purpose was required to be paid in advance. But a mutual obligation to share losses was not all ; this mutuality extended to an equal distribution of any surplus. The cash paid or advanced was not paid to protect some future policy-holder against loss, or to enable him to draw out of the treasury more than all his premiums, but simply to insure the existing policy-holders against loss. That is the venture ; that is the contract. The members for the time being bind themselves each to the other only ; not to any third persons ; not to those who may become members afterwards, and when their policy shall have expired. The money paid by the members for the time being is a trust fund

held for themselves only, and to divert it to the profit of others is a plain breach of trust.

But it is said that this obligation to make mutual distribution must necessarily be limited to those who are members at the period of distribution. It is insisted that no one can be recognized except members, and that by the provisions of the charter no one can be considered members for any purpose, except those who have a living, running policy. Why should this be so in reason? The policy-holders, whose terms expired a day, a month or a year before the re-insurance, had, at the time of such expiration, an interest in the surplus then in the treasury. Part of such surplus was their money, actually paid in by them. And I cannot doubt but that they could have compelled the recognition of their right to it. That interest they did not assign nor transfer. The directors had no right to assign it, or make any disposition of it, except to pay it out for losses arising during the period of time covered by the policy. Clearly, the right to such fund was in the policy-holders for the time being, and it remained in them. I cannot see that change of time or circumstance has worked a devolution of the fund. Are not the members of such mutual insurance company in this respect, if in no other, like the members of a copartnership? When a partner retires without more, he does not forfeit to those who remain, or to new members, the profits of the trade or the capital invested; such profits and capital remain his as certainly as before. The fact that he does not withdraw them when he himself withdraws, or before, cannot change the legal liability of those who remain. The continuing firm is indebted to him at that instant for his share of profits and capital, and remains so until some legal bar, such as payment, release, or statutory limitation, be interposed. This reasoning is not in conflict with the doctrine established in *Mutual Benefit Life Insurance Co.* v. *Hillyard, 8 Vr. 444.*

Again, as intimated, it is urged that by the charter, all persons cease to be members when their policies expire, and that this being so, all rights or claims cease also. As all men well know, this is not exactly the law. The holder of a policy does not lose

his right to recover for loss sustained at any time before the expiration thereof, simply because it has so expired. His right to present his claim, to maintain his suit, and to enforce his judgment is every day verified. And such right is not abridged because he ceases to be liable for subsequent losses.

It is to be remembered this is a mutual, not a stock company. And I also remember that it has been declared that policy-holders in a mutual company stand in the same relation to each other that stockholders do in a stock company. Certainly, stockholders for the time being take all dividends. And it is as certain that if there be funds in the treasury to make dividends, the court will compel them to be declared. And this would seem to be a fair representation of the rights of the policy-holder in a mutual company. When the time for settlement comes, when the period for which a member engaged to share in the risk has ended, then he is entitled, as such policy-holder (or such joint stockholder), to a share of what remains of the whole fund contributed by the several members to make the venture good. But it is still urged that at the dissolution of a stock company the then existing stockholders take all the assets. This is true; but it does not militate against what seems to me to be the wise and equitable rule in the other case. The stockholder takes his share of the assets in the end, in accordance with the contract. That was the agreement, whenever made, whether ten, or fifty, or a hundred years before. In a stock company the stock is issued for the whole period of the company's existence. In a mutual, the policy (the stock) is issued for a limited period—a certain number of years only. Either may be assigned, but one for the existence of the company, and the other for the life of the policy. In the one, a certain number of shares represents the worth of the company and its business; in the other, a certain number of policies. The former generally remains the same in number, though they may increase or diminish in value; while the latter fluctuates, the number of policies being liable to be much greater at some times than at others.

And it is claimed that because the owners of the stock in a joint stock company take all the assets at the dissolution, the

owners of policies take all at the period of final dissolution of a mutual company. The inference is not exactly correct reasoning. I admit that the time of dissolution is the time of distribution, but think that while there can be but one time of dissolution for a stock company, there are as many times for dissolution of a mutual as the recurrence of times for the expiration of policies. In other words, whenever a policy expires, a dissolution is effected as between the rest and the holder of that policy. And at such time he is entitled to his share of the assets, if, under the management during the period he was such policy-holder (such stockholder), there be any. If I take any other view of the case I find myself going against reason and fair dealing, and taking the money which was given and held in trust for one and giving it to others.

In my judgment, every policy which has been issued by the company since the year 1876, on which a premium has been paid, and which has not been forfeited, should be represented in making distribution of the surplus now on hand, and the respective owners and holders thereof receive their fair proportion. I think this proportion should be ascertained upon the basis of premiums paid rather than the amount of re-insurance covered by the policy. For premiums include both time and amount, and are regulated accordingly. A policy for $5,000 for five years would be worth less than for ten years. And besides, the premium is the amount actually paid, and this seems to render it the proper basis of calculation. See *Carlton* v. *Southern Mutual Ins. Co., 72 Ga. 371; S. C., 18 Rep. 75,* and *13 Ins. Law Jour. 565.*

In my judgment, the court would not be justified in lending its countenance to a principle which would enable stockholders and directors, at a favorable opportunity, to divide amongst themselves the surplus in the treasury—the cash accumulations of years. In my judgment, the court would not be justified in taking the cash payments made by former policy-holders and giving them to present policy-holders.

I will advise a reference to a master to ascertain and report the amount of money now in the treasury of the defendant com-

· pany, and who the policy-holders have been since the year 1876, and the amounts due on each policy according to the principles above stated.